UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD LEWIS

        Plaintiff,

v.                                                Case No. 06-CV-15428

MT. MORRIS TOWNSHIP, et al.,

        Defendants.
                                          /

**ORDER DENYING PLAINTIFF'S "MOTION FOR LEAVE TO AMEND COMPLAINT" BUT PERMITTING AN AMENDED COMPLAINT FOR CERTAIN ISSUES NOT RAISED IN THE MOTION, GRANTING IN PART AND DENYING IN PART DEFENDANTS' "MOTION FOR PARTIAL DISMISSAL"**

Plaintiff Todd Lewis, a former police officer for Defendant Mount Morris Township ("Mt. Morris"), brings several claims against Mt. Morris arising out of the termination of his employment. As set forth below, Plaintiff also sues Defendants Albert Ashley and Dennis Van Alstine in their individual and official capacities.[1] Pending before the court are Defendants' motion for partial dismissal and Plaintiff's motion to amend or correct the complaint. The motions were fully briefed and the court held a hearing on October 10, 2007. At the hearing, the parties stipulated to the dismissal of Counts I-V with respect to Defendants Ashley and Van Alstine and Counts X, XII and XIV with respect to all Defendants. The court will, for the reasons stated below, deny Plaintiff's motion to amend and grant in part and deny in part Defendants' motion for partial dismissal.

---

[1]Plaintiff stipulated to the dismissal of Defendants John Newcomer and James Gagliardi from this action. (9/21/07 Stipulation.)

# I. BACKGROUND[2]

Plaintiff began working for the Mt. Morris Police Department on July 23, 1996. (Compl. at ¶ 11.) In 2003, due to "some incidents relating to a condition of alcoholism," Plaintiff received an eighty-three-hour suspension, a probation period of eighteen months and the requirement that he attend meetings of Alcoholics Anonymous. (*Id.* at ¶ 13.) In July 2005 he was asked to sign a "last chance agreement," (*id.* at ¶ 14), which included the following terms:

> (1) Plaintiff would not be discharged for other disciplinary issues, but he was henceforth an "at-will" employee with respect to "alcohol-related issues," which were defined as "including consumption on duty; reporting to work with any alcohol in his system, whether consumed on or off duty; inability to work effectively due to alcohol consumption prior to reporting for duty; and/or associated acts and/or omissions."
>
> (2) Plaintiff was to take "a Preliminary Breath Test (PBT) whenever requested by command personnel during scheduled and non-scheduled working hours."

(*Id.* at ¶¶ 15-16, quoting last chance agreement.)

Mt. Morris found occasion to enforce the last chance agreement in March 2006, which led to Plaintiff's dismissal from the police department and the instant litigation. Around this time, Plaintiff claims that he faced several personal difficulties[3] that created

---

[2]Because the court will deny Plaintiff's motion to amend the complaint, the court will rely solely on Plaintiff's original complaint for its description of the background of the case. For purposes of the pending motions, the court assumes the truth of the allegations in the complaint. *See e.g. Evans-Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005).

[3]Plaintiff describes these difficulties as (1) his "homeless, alcohol addicted brother [coming] to live with Plaintiff, stealing from Plaintiff and eventually forcing Plaintiff to "have the brother removed from [Plaintiff's] home," (2) his daughter breaking her foot, (3) his former wife "attempting to prevent him from seeing his two children" and (4) his "grandmother was dying and the family had received several telephone calls

2

pressure causing him to "feel that he might relapse from sobriety." (*Id.* at ¶ 23.) Plaintiff wrote and presented a letter on March 5, 2006 to Defendant Ashley, the chief of police, requesting a medical leave to "seek inpatient care as I am an alcoholic and do not wish to fall prey to this vicious disease again." (*Id.*) Plaintiff also made clear to Ashley that Plaintiff sought inpatient care at a nearby hospital but there were no vacancies. (*Id.* at ¶ 24.) The letter was ignored. (*Id.*)

That same evening, Plaintiff "took his first drink in several months, and was unable to stop at just one drink." (*Id.* at ¶ 25.) Plaintiff called in to work at 5:00 a.m., informing an officer that Plaintiff "was ill and would be unable to come into work" and asking that the officer relay the request for a leave of absence to Ashley. (*Id.* at ¶ 26.) Plaintiff had available absences or sick days to use under his employment contract. (*Id.* at ¶ 27.) Defendants Ashley and Van Alstine, the deputy chief, ordered Sergeants Newcomer and Gagliardi to visit Plaintiff's residence and administer a PBT. (*Id.* at ¶ 28.)

Newcomer and Gagliardi allegedly[4] were unable to rouse Plaintiff from his sleep, at which point they searched his trash "and found bottles of whiskey which had been consumed by Plaintiff's brother." (*Id.* at ¶¶ 29-30.) The officers called Ashley and Van Alstine, at which point Van Alstine came to Plaintiff's apartment "assumed control and instructed the sergeants to attempt to get a key to Plaintiff's apartment from the maintenance supervisor." (*Id.* at ¶¶ 31-32.) Plaintiff claims that the sergeants

---

requesting that they come to her nursing home to pray for her." (*Id.* at ¶¶ 19-22.)

[4]Plaintiff denies the existence of evidence proving that the officers tried to wake him. (*Id.* at ¶ 29.)

threatened the maintenance supervisor with breaking down Plaintiff's door and other property damage. (*Id.* at ¶ 33.) They obtained the key and, with Van Alstine, entered the apartment where Plaintiff was sleeping, roused him awake and demanded that he submit to a PBT, which resulted in a blood alcohol concentration of 0.165. (*Id.* at ¶¶ 34-36.)

Plaintiff was subsequently suspended and then terminated at a hearing before the Mt. Morris Board of Commissioners. (*Id.* at ¶¶ 37, 40.) Plaintiff's union said it would pursue arbitration to get his job back, but it then refused to proceed. (*Id.* at ¶ 41.) Plaintiff's complaint, filed on December 7, 2006, alleges the following counts:

I. Failure to Accommodate and Wrongful Discharge Under Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"),

II. Retaliation for Engaging in Protected Activity Under the ADA,

III. Violation of Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1101, *et seq.* ("PWDCRA"),

IV. Violation of Family and Medical Leave Act, 29 U.S.C. § 2615, *et seq.* ("FMLA"),

V. Violation of Fourteenth Amendment Legitimate Expectation of Continuing Employment, 42 U.S.C. § 1983,

VI. Violation of Fourteenth Amendment Procedural Due Process Rights, 42 U.S.C. § 1983,

VII. Violation of Fourteenth Amendment Substantive Due Process Rights, 42 U.S.C. § 1983,

VIII. Breach of Contract,

IX. Invasion of Privacy,

X. False Arrest/Imprisonment in Violation of Fourth Amendment, 42 U.S.C. § 1983,

XI. Warrantless Entry in Violation of Fourth Amendment, 42 U.S.C. § 1983,

XII. False Imprisonment Under State Law,

XIII. State Law Trespass and

XIV. Conspiracy

(*See generally* Pl.'s Compl.) On August 3, 2007, Defendants filed a motion for partial dismissal, which is set forth in greater detail below. Plaintiff filed his response on August 24, 2007, followed on August 28, 2007 with his motion for leave to file an amended complaint. The court will first address Plaintiff's motion to amend.

## II. PLAINTIFF'S MOTION TO AMEND

### A. Standard

The decision whether to grant leave to amend the pleadings is governed by Federal Rule of Civil Procedure 15. Rule 15 provides that, after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "In the decision whether to permit an amendment, some of the factors which may be considered by the trial court are undue 'delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.'" *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). The decision whether or not to permit the amendment is committed to the discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401

U.S. 321, 330-32 (1971); *Estes v. Kentucky Util. Co.*, 636 F.2d 1131, 1133 (6th Cir. 1980).

Federal Rule of Civil Procedure 16(b) requires the court to prepare a scheduling order, which can only be modified upon a showing of good cause. Additionally, "a court choosing to modify the schedule upon a showing of good cause, may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003) (citing Fed. R. Civ. P. 16, 1983 advisory committee's notes; *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002)). Before modifying the scheduling order the court should also consider whether the opposing party will suffer prejudice by virtue of the amendment. *Id.* Rule 16 should not be used to circumvent the requirements of Rule 15. *See generally Leary,* 349 F.3d 906-909.

## B. Discussion

Plaintiff filed his motion in apparent response to Defendants' motion for partial dismissal. As Defendants' brief in opposition details, the bulk of Plaintiff's proposed substantive amendments seek to fill gaps in the complaint that are raised in Defendants' motion for partial dismissal: (1) whether the individual Defendants acted in their individual and official capacities, (2) whether the individual Defendants acted as employers or agents of the employer of Plaintiff[5] and (3) whether Mt. Morris has a

---

[5]This category of amendment is moot to the extent that the parties stipulated to dismiss Counts I-V against Defendants Ashley and Van Alstine.

6

policy, custom or practice of certain unlawful conduct. (Defs.' Resp. to Pl.'s Mot. to Amend Compl. at 12-14.)

The court believes that a late-breaking amended complaint that attempts to defuse the arguments in Defendants' motion for partial dismissal would cause prejudice to Defendants. Defendants have already expended resources in briefing and arguing a substantial motion for partial dismissal. It is unclear if Plaintiff's amendments would require additional discovery or otherwise delay the effective resolution of this matter. Further, the timing of the motion is relevant under Rules 15 and 16. The motion was filed within one month of the close of discovery and on the heels of Defendants' motion to dismiss. In addition, Plaintiff's motion mentions no newly discovered evidence of which Plaintiff was previously unaware. Instead, it is plain that the only new knowledge Plaintiff had before filing the motion was the grounds for partial dismissal that Defendants advanced.

The court's scheduling order, moreover, required the addition of any indispensable party by June 25, 2007 and that any motion to amend "must be based on reasonable cause and, if based on newly discovered information, be made promptly after receipt of the information upon which the proposed amendment is based." (3/23/07 Sched. Order at 1-2.) There is no support in the record for Plaintiff's assertion that "the Court's scheduling order sets forth a deadline for amending pleadings of May 31, 2007 [and] this motion for Leave to Amend was filed before that date . . . ." In actuality, May 31, 2007 appears nowhere in the court's March 23, 2007 Scheduling Order and Plaintiff's instant motion was filed in any event on August 28, 2007, three

months after the supposed May 31, 2007 deadline. Plaintiff's inaccurate statement of the record, represents, the court trusts, nothing more than inadvertent oversight. It is, in any event, detrimental to Plaintiff's position. *General Elec. Co.*, 916 F.2d at 1130. As a result, Plaintiff has not presented his request convincingly to the court.

The court is not persuaded that there is reasonable cause to amend its scheduling order. The late timing and the potential for prejudice to Defendants weigh against allowing the amendment under Rule 16. The court concludes that the same considerations under Rule 15 advise against freely granting leave to file an amended complaint in this case.[6] The court will therefore rely only upon Plaintiff's original complaint as it evaluates Defendants' motion for partial dismissal.

However, the parties stipulated at the hearing to allow Plaintiff to amend Counts I-IV of his complaint with respect to Plaintiff's ADA, FMLA and PWDCRA claims against Mt. Morris. Specifically, Plaintiff shall plead the elements of his eligibility for protection under each statute (such as the effect of his alleged condition on his major life activities), along with any other reasonably related allegations to which Mt. Morris does not object. The parties further agreed that, before the deadline for dispositive motions, Plaintiff would be available for approximately another hour of deposition time to provide testimony related to his amended allegations.

### III. DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

---

[6]These considerations are sufficiently dispositive that the court need not evaluate the parties' arguments concerning the futility of Plaintiff's proposed amended complaint. For purposes of the motion for partial dismissal, the court's analysis may touch upon the futility of the amended complaint.

8

### A. Standard

When ruling on a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true . . . ." *Evans-Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 466 (6th Cir. 2000). Although a heightened fact pleading of specifics is not required, the plaintiff must bring forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

Though decidedly liberal, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Twombly*, 127 S.Ct. at 1964-65 (citing Fed. R. Civ. P. 8(a)). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 127 S.Ct. 1955). In application, a "complaint must contain either direct or

inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)).

### B. Discussion

#### 1. Plaintiff's § 1983 Claims (Counts V-VII, XI)

##### a. Defendant Mt. Morris

Defendants argue that all § 1983 claims against Defendant Mt. Morris should be dismissed because Plaintiff failed to plead that he was deprived of a constitutional right by an official municipal policy or custom as required by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). (Defs.' Mot. at 21-22.) The bulk of Plaintiff's response seeks leave to amend, arguing that dismissal would be too drastic. (Pl.'s Resp. at 26-28.) For the reasons stated earlier, the court will not grant leave to amend the complaint. The court thus turns to Plaintiff's response on the merits, which cites case law for the proposition that no magic words are required to plead a case of municipal

10

liability under § 1983.  (*Id.* at 26.)  Applying that proposition, Plaintiff's argument in total consists of the following:

> In each of the Counts that the Defendants claim Plaintiff has improperly plead, there is reference to actions taken within the scope of employment, and unlawful actions.  Taking the idea that unlawful acts were committed together with the idea that such actions were taken within the scope of one's employment, it is clear that Plaintiff has set out a claim that policies, practices, or customs gave rise to Plaintiff's injuries.

(*Id.*)

The court is unpersuaded.  Plaintiff's use of passive voice and vague pronouns prompts important questions about whose unlawful acts and whose scope of employment are those to which Plaintiff refers.  While the court accepts that the mere absence of certain magic words in a complaint cannot be fatal to that complaint, Plaintiff's exposition of his own complaint falls far short of providing reasonable notice that some official municipal custom or policy was the cause of his alleged injuries.  The complaint references no pattern of behavior or prevailing policy of Mt. Morris that worked against Plaintiff.  It is even unclear if his last chance agreement was a routine arrangement or, for that matter, a form of special punishment (or, perhaps, solicitude) given to Plaintiff.  Nor does the complaint allege whether any sort of directive from Mt. Morris guided the conduct of the individual Defendants.  Under the circumstances, the complaint fails to meet the standard set forth in *Monell.*  436 U.S. at 690-91.  The problem is not, as Plaintiff argues, the absence of magic words, but, rather, a complete absence of any allegations from which the court could even reasonably infer the claimed existence of official governmental policy or custom that deprived Plaintiff of

constitutional rights. The court will therefore dismiss Counts V-VII and XI with respect to Defendant Mt. Morris.

### b. Individual Defendants

Defendants advance several arguments, grounded in the law of qualified immunity, for dismissing all § 1983 claims against the individual Defendants. The Sixth Circuit applies a three-step inquiry when it evaluates a claim for qualified immunity. *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007). First, the court must, based on the applicable law and viewing the facts in the light most favorable to the plaintiff, consider whether the plaintiff has "show[n] that a constitutional violation has occurred." *Id.* The court then considers "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Id.* Finally, the court must "determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* (quotation and citations omitted). If any of these elements is not present, the court must grant qualified immunity. *Id.* (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

### i. Counts V-VII

The court finds that dismissal of Counts V-VII is appropriate because each claim is predicated upon the assertion of a non-existent property right to continued employment. As set forth in the complaint, Plaintiff's employment became at-will with respect to "alcohol related issues" when he signed the last chance agreement. (Pl.'s Compl. at ¶ 14.) According to that agreement, such issues are described as "including

consumption on duty; reporting to work with any alcohol in his system, whether consumed on or off duty; inability to work effectively due to alcohol consumption prior to reporting for duty; and/or associated acts and/or omissions." (*Id.* at ¶ 15.)[7] The agreement also required Plaintiff to submit to a PBT "whenever requested by command personnel during scheduled and non-scheduled working hours."[8] (*Id.* at ¶ 16.) Assuming the truth of Plaintiff's complaint, the court concludes that he was terminated pursuant to the last chance agreement for alcohol related issues. For purposes of his termination, Plaintiff was therefore an at-will employee with no property right stemming from an expectation of continued employment. *See Bracco v. Michigan Tech. Univ.*, 588 N.W.2d 467, 471 (Mich. Ct. App. 1998) (holding that "a public employee does not have a property right in continued employment when the position is held at the will of the employee's superiors and the employee has not been promised termination only for just cause") (citation omitted). An employer may discharge an at-will employee at any time and for no reason, even arbitrarily and capriciously. *Id.* at 476 (citations omitted).

Plaintiff attempts to interpret the last chance agreement to his advantage, but his arguments are unavailing. The agreement forbids the "inability to work effectively due

---

[7]In this context, "including" precedes a list that is illustrative, not exclusive. The items listed are given as a few examples among many of possible alcohol related issues. While a better drafted agreement would have stated "including but not limited to," the plain meaning of "including" in a context such as the last chance agreement necessarily implies that list which follows is not exhaustive.

[8]The court is not persuaded that by calling in sick Plaintiff somehow converted his scheduled working hours into a non-working time period when the demand for a PBT would not be authorized. Whether Plaintiff calls in sick or not, his scheduled working hours remain scheduled working hours and retain the same essential character as the time that Plaintiff would be expected to be ready and sober for work.

13

to alcohol consumption prior to reporting to duty." (Pl.'s Compl. at ¶ 15.) Calling in sick due to alcohol consumption[9] qualifies as a breach of this part of the agreement. In other words, a police officer who calls in sick due to alcohol consumption is unable to work effectively due to alcohol consumption prior to reporting for duty. The factual scenario described in the complaint falls squarely within the province of the last chance agreement.

Further, the agreement contains the additional catch-all language of "and/or associated acts and/or omissions." (*Id.*) An associated act or omission of the alcohol-related conduct listed in the agreement is the failure to come to work due to alcohol consumption. The behavior described in the complaint is the kind of behavior that the last chance agreement sought to avoid: alcohol consumption that adversely impacted Plaintiff's job performance and ability to work. Accordingly, Plaintiff had no right to continued employment and no procedural or substantive due process rights connected to the termination of his employment. *Meals*, 493 F.3d at 729. With respect to the individual Defendants, the court will dismiss Counts V-VII.

### ii) Count XI

---

[9]The complaint, read in its entirety, and even in a light most favorable to Plaintiff, compels the conclusion that the reason for calling in sick was alcohol consumption, as the complaint (1) explains how Plaintiff faced several stresses in his personal life and again fell victim to alcoholism the prior evening, (2) describes how Plaintiff when he called in sick also asked an officer to relay his medical leave request and (3) concedes an allegedly high blood alcohol content the following morning. The complaint, read in its entirety, provides only one sensible explanation for the reason behind Plaintiff's inability to report to work: alcohol related issues as they are contemplated in the last chance agreement.

Count XI alleges violations of Plaintiff's Fourth Amendment rights. Plaintiff alleges that Van Alstine and two other officers are liable for effecting a warrantless entry of Plaintiff's residence under color of law and in the scope of their employment in the absence of exigent circumstances or other authorization. (*Id.* at ¶¶ 146-51.)

Defendants argue that Count XI is deficient because Plaintiff failed to (1) make specific allegations against each Defendant, (2) plead any constitutional right was clearly established and (3) plead any conduct was objectively unreasonable. (Defs.' Mot. at 25-29.) Plaintiff responds that qualified immunity does not bar his § 1983 claims against the individual Defendants because no reasonable officer could have believed that he had the right to violate Plaintiff's right against unlawful entry into and search of Plaintiff's home. (Pl.'s Resp. at 29-30.)

Noticeably absent in the facts and in Count XI of the complaint are allegations about the personal involvement of Defendant Ashley in the alleged unlawful entry into Plaintiff's residence. Nor is there an allegation that Ashley personally authorized such behavior. The complaint merely alleges that the officers on the scene called and spoke to Ashley and Van Alstine and that Van Alstine came to Plaintiff's residence and assumed control. (Pl.'s Compl. at ¶¶ 31-32.) In the absence of claims of a constitutional wrong by Ashley, the court must find that Ashley is entitled to qualified immunity for Count XI. *See Summers v. Lice*, 368 F.3d 881, 888 (6th Cir. 2004).

Regarding Van Alstine, there are specific allegations concerning his allegedly unlawful conduct in entering Plaintiff's residence. At the hearing, Defendants argued that, under the circumstances as alleged in the complaint, Plaintiff effectively waived

15

any Fourth Amendment rights in his last chance agreement and therefore Van Alstine could not have violated any clearly established constitutional right or otherwise behaved in an objectively unreasonable manner. The court is not persuaded. While the plain terms of the last chance agreement did authorize Van Alstine to demand Plaintiff to submit to a PBT, the agreement is silent about Plaintiff's right to be free from warrantless entry to his home. Assuming the truth of the allegations in Count XI, Van Alstine violated Plaintiff's Fourth Amendment rights when he entered Plaintiff's residence without a warrant or exigent circumstances and against Plaintiff's will. The last chance agreement, as the court understands it in Plaintiff's complaint, did not authorize such entry. There is a presumption against the waiver of constitutional rights that only a knowing and unequivocal waiver may overcome. *See e.g. Palfy v. Cardwell*, 448 F.2d 328, 332 (6th Cir. 1971) (citing *Brookhart v. Janis*, 384 U.S. 1 (1966), *Johnson*

*v. Zerbst*, 304 U.S. 458 (1938). In the absence of such a waiver, dismissal of Count XI in favor of Van Alstine is improper.[10]

## IV. CONCLUSION

IT IS ORDERED that "Plaintiff's Motion for Leave to Amend Complaint" [Dkt. # 24] is DENIED. With respect to an issue not raised in Plaintiff's motion but pursuant to the parties' stipulation, Plaintiff shall file, if not already filed by the date of the entry of this order, an amended complaint that includes allegations with respect to his eligibility for statutory protection under Counts I-IV **by October 17, 2007**. Plaintiff shall be available[11] forthwith for about another hour of deposition so that Defendants may

---

[10]Near the conclusion of the hearing, Plaintiff also argued for reconsideration of the court's September 28, 2007 order denying his request to extend discovery. Assuming the timeliness of this oral request, Rule 7.1(g) of the Local Rules for the Eastern District of Michigan provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled," and (2) show that "correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004) (citing *United States v. Cican,* 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001)).

The court's previous order speaks for itself. The court is not persuaded that its previous order relied upon a palpable defect the correction of which would lead to a different outcome. Even if Plaintiff presents new arguments to establish good cause for modifying the court's scheduling order, those arguments cannot sound in a motion for reconsideration because they address the same issue. *See* E.D. Mich. LR 7.1(g)(3); *Czajkowski v. Tindall & Assocs., P.C.,* 967 F.Supp. 951, 952 (E.D. Mich. 1997). Further, to the extent that Plaintiff seeks discovery for counts that the court has dismissed, that discovery is now moot. Finally, Defendant did not have adequate opportunity to respond to Plaintiff's previously unexpressed claim that depositions were adjourned because certain predicate document requests and interrogatories were unmet.

[11]As the parties discussed provisionally, Defendants may agree to allow Plaintiff to appear by telephone.

explore Plaintiff's new allegations with sufficient time to rely upon this discovery before filing any further dispositive motions, which must be filed by **October 24, 2007.**

IT IS FURTHER ORDERED that "Defendant's Motion for Partial Dismissal" [Dkt. # 17] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to Defendant Mt. Morris for Counts V-VII and XI. With respect to Defendant Ashley, the motion is GRANTED for Counts V-VII and XI. With respect to Defendant Van Alstine, the motion is GRANTED for Counts V-VII and DENIED for Count XI.

IT IS FURTHER ORDERED that, pursuant to the parties' stipulation, Count XIV (Conspiracy) is dismissed with respect to all Defendants.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: October 15, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 15, 2007, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522